Opinion issued June 17, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00742-CR

———————————

Lee Alexander Magness, Appellant

V.

State of
Texas, Appellee



 



 

On Appeal from the 338th District Court

Harris County, Texas

Trial
Court Case No. 1145123



 



MEMORANDUM OPINION

A jury
found Lee Alexander Magness guilty of misapplication of fiduciary property in
an amount less than $200,000 but more than $100,000.  The trial court sentenced him to ten years in
prison and ordered him to pay $199,999 in restitution.  On appeal, Magness contends that (1) the
trial court deprived him of his constitutional right to counsel; (2) the State
committed fundamental error during closing argument by arguing law contrary to
the jury charge; (3) the trial court erred in setting the amount of restitution
without holding a hearing to determine the amount of loss to the complainant;
and (4) the trial court erred in denying Magness’s request for shock probation.  Magness also complains that the appellate
record is incomplete, but the trial court supplemented the record with the
missing material before this case was submitted, thereby rendering the issue
moot.  We conclude that (1) the trial
court acted within its discretion in declining Magness’s request to withdraw
his earlier refusal of court-appointed counsel, (2) Magness waived his complaint
concerning the State’s closing argument, (3) the evidence supports the
restitution award, and (4) the dismissal of his motion for shock probation did
not violate his due process rights.  We
therefore affirm.  

Background

The
transaction

          Gary
Meier, a partner at a consulting and institutional investment company, became
acquainted with Magness, an attorney, during a business deal.  When Meier became interested in helping his
father make an investment in 2004, he consulted with Magness about various
investment opportunities in Panama.  Meier
traveled with Magness to Panama where they met with a Panamanian attorney, Jose
Broce.  On Broce and Magness’s advice, Meier
decided to invest $700,000 in a Panama Communications Consultants.  To accomplish the transaction, Meier
transferred $4,400 to Magness’s client trust account in August 2004 and the
remaining $695,600 in September 2004.  Once the funds arrived in Magness’s trust
account, the transaction required him to transfer all of the funds to Broce in Panama
for the $700,000 stock purchase.  In February
or March of 2005, however, Meier learned Broce had received only a portion—approximately $404,000—of the funds. 


          Meier
met with Magness, who told him that the discrepancy resulted from a problem
with the wire transfer and that he would resolve the problem with Broce.  After that meeting, though, Magness failed to
provide Meier with information concerning the status of the transaction and was
unresponsive to Meier’s inquiries for several weeks.  When Magness eventually met with Meier in May
2005, he gave Meier documentation showing transfer of only $404,295 to
Panama.  Magness told Meier that he had
deposited the remainder of the funds in an offshore account, but he refused to
provide Meier with any documentation of the deposit.  Meier requested that Magness return $40,000
of the funds so that Meier could pay a debt. 
Magness indicated that he would need a few days to obtain the money from
the offshore accounts.  The next day,
Magness gave Meier a $40,000 cashier’s check. 
Meier emailed Magness a demand that he return $251,215—the remainder of the missing funds.  By the time Meier demanded the money, Magness
had only $10,308.83 in the IOLTA account into which Meier initially had
transferred the funds.  Magness never returned
the funds to Meier or provided Meier with any more information concerning their
location. 

          At
trial, Magness showed that in November 2004, he loaned $75,000 to another
client to close a real estate transaction in Waxahachie, Texas.  The loan terms required repayment at a daily
interest rate of prime plus two percent. 
Despite using Meier’s funds for the loan, Magness never informed the
client that the funds belonged to Meier, and Meier’s name did not appear in the
real estate transaction documents.  After
the deal, the client’s mother transferred $92,000 directly to Magness to cover
the loan, and Magness received a $238,000 finder’s fee.  Magness admitted that he never paid any of that
money to Meier.  Magness also admitted
that (1) neither Meier nor his father had the $255,000 returned to him, (2)
$255,000 of Meier’s money was missing, and (3) Meier would have no way to
locate the missing funds if Magness became incapacitated.  

Proceedings
in the trial court

          When
Magness was charged, he initially retained an attorney to represent him, but
that attorney moved to withdraw as counsel. 
Magness initially indicated that he would try to hire another attorney.  After a few months passed and no attorney had
appeared for Magness, the trial court held an indigency hearing in August 2006,
found Magness indigent, and appointed an attorney to represent him.  During this period, Magness agreed to several
trial resettings, the last of which was for May 9, 2008.  

          In
late March 2008, Magness expressed dissatisfaction with appointed counsel’s
preparation for trial.  Seeking
clarification, the trial court asked Magness if he sought removal of his
appointed counsel or intended to represent himself at trial.  Magness explained that he did not.  A few weeks later, Magness and his appointed
counsel met with the trial court to aid in securing the attendance of an expert
witness and several witnesses who reside in Panama.  The trial court approved travel funds.

          Just
before voir dire, appointed counsel announced ready conditioned on the
appearance of the out-of-country witnesses. 
Later that day, after appointed counsel spoke with the witness’s liaison
in Panama, he informed the trial court that the witnesses would not be
available to testify for at least three weeks. 
A few days later, after the jury was impaneled, appointed counsel moved
for a continuance based on witness unavailability.  He requested that the case be recessed until
June 2 and assured the trial court that it would not take more than three days
to present the witnesses.  

          After
questioning the jury, the trial court learned that certain jurors would face
scheduling conflicts if the trial were postponed.  As a result, the trial court requested a
second jury panel to select alternate jurors and allowed the State and
appointed counsel to question them during voir dire.  Shortly after the trial court ruled on the
parties’ motions in limine and addressed other pretrial requests, Magness
waived his right to counsel and asked to proceed pro se with appointed counsel
continuing as standby counsel.  After
questioning Magness to determine that his waiver was knowing and voluntary, the
trial court granted the request.

          After
the State presented its case in chief, Magness orally moved for mistrial, and,
after alluding to his view that appointed counsel lacked competence and was not
adequately prepared for trial, declared that, “although the F[a]retta warnings were given, it’s
become apparent to this Court, the DA’s, myself, and the jury that I’m not
proficient in the procedures required to prosecute [sic] this complex criminal
case.”  Magness informed the court that a
friend was willing to loan him money to hire counsel and that he wished to withdraw
his waiver of the right to counsel.  

The trial court stated that it was
willing to return standby counsel’s status to appointed counsel or allow
Magness to hire a new attorney if the attorney was prepared to immediately
assume Magness’s defense.  But, the trial
court explained, “I’m not going to declare a mistrial so you can hire an
attorney and we can start it another day.” 
Magness admitted that he had not yet hired counsel, and alternatively
requested a recess to allow him time to confer longer with the attorneys he
previously contacted.  The trial court
denied the request, noting that “[t]his case has been going on for two
weeks.  We’re going to proceed with the
case.  I’m not going to recess the case
for that matter.”  After further
discussion, Magness again asked the court for a continuance, this time to allow
him to prepare his case, which the trial court also denied.  At the close of the discussion, the trial
court reiterated to Magness that it continued to be willing to reappoint
standby counsel as defense counsel, but that it understood Magness did not want
to exercise that option.  Magness
confirmed that the court correctly understood his position. 

The jury found Magness guilty of
misapplying fiduciary property in an amount less than two hundred thousand
dollars, but more than one hundred thousand dollars.  In August, the trial court sentenced Magness
to ten years in prison and ordered restitution of $199,999 as a condition of
parole.  Some unspecified time after
sentencing, Magness moved for shock probation. 
A written motion for shock probation does not appear in the record, but
a supplemental reporter’s record shows that the trial court heard the motion on
February 20, 2009.  In the interim
between sentencing and the hearing, the sentencing judge had left office.  The newly seated judge denied the motion
because, as she was not the sentencing judge, the statute did not authorize her
to grant shock probation.  In addition, the
sentencing judge was not statutorily eligible to sit as a visiting judge.  




 

Discussion

I.       Right
to counsel

Magness first contends that the
trial court’s denial of his request to withdraw his waiver of the right to
counsel violated his constitutional rights. 
The Sixth Amendment of the federal constitution guarantees both the
right to counsel and the corresponding right to self-representation.  Faretta
v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975); Hathorn v. State, 848 S.W.2d 101, 122–23
(Tex. Crim. App. 1992); see also Hatten
v. State, 71 S.W.3d 332, 334 (Tex. Crim. App. 2002) (noting that Faretta rights are triggered when
accused contests guilt); Tex.Code Crim.
Proc. Ann. art. 1.05 (Vernon 2005) (recognizing right of accused to be
heard by himself, through counsel, or both); Carroll v. State, 176 S.W.3d 249, 256 (Tex. App.—Houston [1st Dist.]
2004, pet. ref’d).  

In Faretta, the Supreme Court
recognized that “[w]hen an accused manages his own defense, he relinquishes . .
. many of the traditional benefits associated with the right to counsel” and
concluded that in order to represent himself, an “accused must ‘knowingly and
intelligently’ forgo those relinquished benefits.”  422 U.S. at 818–20, 95 S. Ct. at 2533.  Such a decision, to be constitutionally
effective, must be made (1) competently, (2) knowingly and intelligently, and
(3) voluntarily.  Godinez v. Moran, 509 U.S. 389, 400–401, 113 S. Ct. 2680, 2687
(1993); Faretta, 422 U.S. at 834–36,
95 S. Ct. at 2541.  

          Magness
concedes that his waiver of the right to counsel met all constitutional and
statutory requirements.  He contends,
however, that after he withdrew that waiver, the trial court “had an obligation
to stop the trial to allow [him] to retain counsel or to order standby counsel
to take over his defense.”  

Article 1.051(h) of the Texas Code
of Criminal Procedure addresses withdrawal of a waiver of the right to
counsel.  Tex. Code Crim. Proc. Ann. art. 1.051(h) (Vernon Supp. 2007).
 It provides: 

A defendant may withdraw a waiver of the
right to counsel at any time but is not entitled to repeat a proceeding
previously held or waived solely on the grounds of the subsequent appointment
or retention of counsel. If the defendant withdraws a waiver, the trial court, in
its discretion, may provide the appointed counsel 10 days to prepare.

Id.  A defendant’s right to withdraw his waiver of
the right to counsel has its limits. A trial court may deny a request to
withdraw the waiver when doing so would obstruct orderly procedure or interfere
with the fair administration of justice.  See Culverhouse
v. State, 755 S.W.2d 856, 861 (Tex. Crim. App. 1988); Medley v. State, 47 S.W.3d 17, 23 (Tex. App.—Amarillo 2000, pet.
ref’d) (“Trial courts have the duty, and discretion, to maintain the orderly
flow and administration of judicial proceedings, including the exercise of a
defendant’s right to counsel.”) (citing Faretta,
422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46).  A defendant “does not have the right to
repeatedly alternate his position on the right to counsel and thereby delay
trial.”  Medley, 47 S.W.3d at 23; see
Johnson v. State, 257 S.W.3d 778, 781 (Tex. App.—Texarkana 2008, pet. ref’d)
(“Constitutional protections connected with the right to counsel may not be so manipulated
as to delay or obstruct the trial process.”) (citing Dunn v. State, 819 S.W.2d 510, 518–19 (Tex. Crim. App. 1991)); Trevino v. State, 555 S.W.2d 750, 752
n.1 (Tex. Crim. App. 1977).  A “decision
of the trial court as to the effect the reclamation of the right by the
defendant would have on the orderly administration of justice will not be
disturbed on appeal absent an abuse of discretion.”  Medley,
47 S.W.3d at 24.  

Although Magness denies any attempt
to manipulate or delay the proceedings in attempting to withdraw his waiver of
the right to counsel, the record contains adequate grounds to support the trial
court’s decision.  Magness agreed to
several continuances of the trial setting, then moved to dismiss the case for
lack of a speedy trial.  Magness did not
waive his right to counsel until after the jury was seated, then sought to
withdraw that waiver the day before the State was to rest its case, even though
he had not yet retained new counsel.  Moreover,
the trial court stated that it would allow Magness to withdraw his right if his
newly hired counsel was ready to assume Magness’s defense without creating any
additional delay in the proceedings.  Magness
also persisted in refusing the trial court’s repeated offer to reinstate
standby counsel as appointed counsel.  Under
these circumstances, granting Magness’s request, at a minimum, would have
created yet another delay—this time,
mid-trial—and nothing about the
proceeding, aside from Magness’s expression of interest in having counsel, had
changed since Magness knowingly waived his right to counsel.  The trial court had no duty to correct
Magness’s arguably tactical error in waiving his right to appointed counsel.  

Citing Indiana v. Edwards, 554 U.S. 164, 128 S. Ct. 2379 (2008), Magness further
contends that because he recognized his lack of competence in the subject
matter of the criminal proceedings against him, the trial court erred in denying
his request for appointment of counsel.  Edwards does not support this
contention.  In Edwards, the Supreme Court held that “[t]he Constitution permits
States to insist upon representation by counsel for those competent enough to
stand trial . . . but who still suffer from severe mental
illness to the point where they are not competent to conduct trial proceedings
by themselves.”  554 U.S. 164, 128 S. Ct.
at 2388.  

Magness does not suggest that he
suffers from severe mental illness; rather, he contends that his skills and
experience as a lawyer do not include defense of criminal charges.  The standard of professional competence required
of a lawyer in representing a client is wholly unrelated to the mental
competence issues addressed in Edwards.  In holding the attorney to a professional
standard of competence, the Texas Disciplinary Rules of Professional Conduct put
the onus not on the court, but on the lawyer himself, to recognize the matters which
lie beyond his competence.  See Tex.
Discipinary R. Prof’l Conduct 1.01(a), reprinted in Tex. Gov’t Code
Ann. tit. 2, subtit. G app. A (Vernon 2005) (providing, with two
specified exceptions, neither of which apply here, “[a] lawyer shall not accept
or continue employment in a legal matter which the lawyer knows or should know
is beyond the lawyer’s competence”).  Edwards has no bearing on this
case.  Consequently, we hold that the
trial court did not abuse its discretion in denying Magness’s request to
withdraw his waiver of the right to counsel. 


II.      Closing
argument

Magness next contends that the
State, in closing argument, misstated the law applicable to the misapplication
of fiduciary property charge, an error that, he claims, amounts to fundamental
error that requires reversal even though he failed to timely object to the
misstatement.  Before deciding Cockrell v. State, 933 S.W.2d 73, 89
(Tex. Crim. App. 1996), Court of Criminal Appeals recognized an exception to
the general rule that failure to timely object to improper jury argument waives
the right to complain about that issue, and allowed a defendant to raise the
issue for the first time on appeal if the argument was so prejudicial that an
instruction to disregard could not have cured the harm.  See
Briddle v. State, 742 S.W.2d 379, 389 (Tex. Crim. App. 1987).  In Cockrell,
however, the Court recognized that, after the enactment of Texas Rule of
Appellate Procedure 52(a) and its decision in Marin v. State, 851 S.W.2d 275 (Tex. Crim. App. 1993), it could no
longer recognize that exception.  See 933 S.W.2d at 89, quoted in Valencia v. State, 946 S.W.2d
81, 82–83 (Tex. Crim. App. 1997).  A defendant’s
failure to timely object to a jury argument and pursue a ruling on his
objection—even if that argument cannot
be cured by an instruction to disregard—waives his right to complain about the
argument on appeal.  Valencia, 946 S.W.2d at 82–83;
Cockrell, 933 S.W.2d at 89; see Tex. R. App. P. 33.1(a); see also Curiel v. State, 243 S.W.3d 10,
19 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d) (holding that appellant
waived complaint that prosecutor impermissibly commented on appellant’s
post-arrest silence in closing argument because objection at trial did not
comport with complaint on appeal).  Thus,
if a defendant fails to timely and properly object to a jury argument, the
waiver rule applies even when the jury argument might be incurably harmful.  Threadgill
v. State, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); McDonald v. State, 186 S.W.3d 86, 9091 (Tex.
App.—Houston [1st Dist.] 2005, no pet.) (citing Bias v. State, 937 S.W.2d 141, 144 (Tex. App.—Houston [1st Dist.] 1997,
no pet)); see Archie v. State, 221
S.W.3d 695, 699 (Tex. Crim. App. 2007) (holding that objection is required to
preserve jury argument error for appellate review).  We therefore hold that Magness failed to
preserve this complaint for appeal.[1] 

III.    Sufficiency
of the Evidence for Restitution Award

          We consider
Magness’s evidentiary sufficiency challenge under both the legal and factual
sufficiency standards of review.  When
evaluating the legal sufficiency of the evidence, we view it in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798
(Tex. Crim. App. 2005). The standard is the same for both direct and circumstantial
evidence cases. King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995).  We
do not weigh any evidence, or evaluate the credibility of any witnesses, as
this was the function of the trier of fact. See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421
(Tex. Crim. App. 1992).  Instead, our
duty is to determine whether both the explicit and implicit findings of the
trier of fact are rational by viewing all the evidence admitted at trial in the
light most favorable to the verdict. See
Adelman, 828 S.W.2d at 422.  In so
doing, any inconsistencies in the evidence are resolved in favor of the
verdict.  Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 

When conducting a factual sufficiency review, we view all of
the evidence in a neutral light. Ladd v.
State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will set aside the
verdict only if (1) the evidence is so weak that the verdict is clearly wrong
and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the first prong of Johnson, we cannot conclude that a verdict is “clearly wrong” or
“manifestly unjust” simply because, on the quantum of evidence admitted, we
would have voted to acquit had we been on the jury.  Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of
that conflict.  Id.  In conducting a factual
sufficiency review, we must also discuss the evidence that, according to the
appellant, most undermines the jury’s verdict.  See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  

We may not re-weigh the evidence and substitute our judgment
for that of the jury.  King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).  The jury alone
determines the weight to place on contradictory testimonial evidence because
that determination depends on the jury’s evaluation of credibility and
demeanor.  Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).  The jury may choose to believe all, some, or
none of the testimony presented.  Id. at 407 n.5.

Under the Texas Penal Code, a person
misapplies property he holds as a fiduciary when he deals with property
contrary to an agreement under which he holds the property or contrary to the
laws governing the property so held, and the manner with which the person
handles the property must present a substantial risk of loss to the beneficiary
or property owner.  Tex. Penal Code Ann. § 32.45(b) (Vernon Supp. 2009).  The Court of Criminal Appeals describes
“substantial risk of loss” as “a real possibility of loss,” one that is more
likely than not a risk that can result in loss. 
Casillas v. State, 733 S.W.2d
158, 163–64 (Tex. Crim. App. 1986).  

In contending that the evidence
does not support a finding that his handling of Meier’s funds presented a
substantial risk of loss, Magness urges us to consider evidence that he placed
the funds in a short-term real estate investment, in which, he asserts, “the
money was safer than if it had been placed in a bank.”  Given that Magness never gave Meier any
documentation showing the whereabouts of the money, never informed Meier of the
use of those funds in the real estate transaction, and never returned any money
from the transaction to Meier, the jury need not have credited Magness’s
defensive position that he invested Meier’s funds in the real estate
transaction.  See King, 29 S.W.3d at 562; Cain v. State, 958 S.W.2d. at 407 n.5.  

Magness’s challenge to the
sufficiency of evidence supporting the amount of the trial court’s restitution
award is also unavailing.  In determining
the amount of restitution, the trial court must consider  

(1)     the amount of the loss sustained by any victim and the amount
paid to or on behalf of the victim by the compensation to victims of crime fund
as a result of the offense; and

(2)     other
factors the court deems appropriate.

Tex. Code Crim. Proc. Ann. art.
42.037(e) (Vernon Supp. 2009).  There are
three limits to the amount of restitution that a trial court can order.  See
Campbell v. State, 5 S.W.3d 693, 696–97 (Tex. Crim. App. 1999).  The amount must be just and supported by a
factual basis within the loss of the victim. 
Id. at 696.  The restitution ordered must also be for the
offense for which the convicted person is criminally responsible.  Id.
at 697.  Finally, restitution is proper
only for the victim or victims of the offense for which the offender is
charged.  Id.  

The trial court’s restitution award
stays within these limits. Magness admitted at trial that he had not returned
$255,000 of Meier’s money to him, and the jury found that Magness
misappropriated from Meier less than $200,000 but more than $100,000.  The restitution award thus comports with the
evidence and the jury’s finding.  We hold
that an adequate factual basis supports the trial court’s restitution award.

IV.     Motion
for shock probation

          Finally,
Magness contends that the statute authorizing the trial court to grant shock
probation violates his federal and state constitutional rights to due process as
applied in his case because it precluded consideration of his request.  Article 42.12, section 10(a) of the Code of
Criminal Procedure provides that:

In a felony case, only the judge who
originally sentenced the defendant may suspend execution thereof and place the
defendant under community supervision pursuant to Section 6 of this article. If
the judge who originally sentenced the defendant is deceased or disabled or if
the office is vacant and the judge who originally sentenced the defendant is
deceased or disabled or if the office is vacant and a motion is filed in
accordance with Section 6 of this article, the clerk of the court shall
promptly forward a copy of the motion to the presiding judge of the
administrative judicial district for that court, who may deny the motion
without a hearing or appoint a judge to hold a hearing on the motion.

Tex. Code Crim. Proc. Ann. art.
42.12 § 10(a) (Vernon Supp.
2009).  Magness, however, has not shown
that the Legislature lacked a rational basis for limiting the authority to
grant a request for community supervision to the sentencing judge or that he
was prevented from having his request for shock probation heard before the end
of the sentencing judge’s term.  Further,
he has not shown that he presented his motion to the regional presiding judge
for a ruling or appointment of a judge to hear it.  Absent those showings, we decline to consider
his constitutional challenge.  

Conclusion

We conclude that (1) the trial
court acted within its discretion in declining Magness’s request to withdraw
his refusal of court-appointed counsel, (2) Magness waived his complaint
concerning the State’s closing argument, (3) the evidence supports the
restitution award, and (4) Magness failed to show that the application of
Article 42.12, section 10(a) of the Code of Criminal Procedure to his motion
for shock probation violates his due process rights.  We therefore affirm the judgment of the trial
court.  

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Justices Jennings, Bland, and Wilson.[2]

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]  To the extent
Magness’s fundamental error argument complains of a due process violation, it
also fails.  We presume that the jury
followed the law correctly set forth in the court’s charge when, as here, no
evidence has been presented to rebut that presumption.  See
Thrift v. State, 176 S.W.3d 221, 223–24 (Tex. Crim. App. 2005).





[2]  The Honorable
Randy Wilson, State District Judge of the 157th Judicial District, Harris
County, Texas, sitting by assignment.