**Jonathan N. McDONALD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–00065–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 17, 2005.

Richard Edward "Dick" Wheelan, Houston, for appellant.

Jessica Akins McDonald, Assistant District Attorney, Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

A jury convicted appellant Jonathan N. McDonald of aggravated sexual assault of a child and assessed punishment at seven years' confinement. On appeal, McDonald asserts that (1) the trial court erred in permitting the State to ask an improper commitment question during voir dire, and (2) the State made improper remarks to the jury during closing argument at the guilt-innocence phase of the trial. We affirm.

### Facts

The complainant in this case is a twelve-year-old boy. McDonald's companion, Carlos Ledesma, was employed with the complainant's mother at the Red Top Cab Company. When McDonald and Ledesma lost their video store business, the complainant's mother invited them to stay with her family. The complainant testified that while McDonald was living with his family, McDonald wrestled with him and grabbed him in his private area on two separate occasions.

After McDonald and Ledesma moved into their own apartment, the complainant stayed with them during Easter weekend of 2004. McDonald and Ledesma took the complainant to a bar and gave him a shot of alcohol to drink. Later, McDonald and Ledesma asked the complainant to come to their bed, and McDonald began touching the complainant in his private area. One of the men removed the complainant's clothes, and McDonald then pressured the complainant to insert his penis into McDonald's anus. The encounter lasted approximately twenty minutes.

The second incident occurred while the complainant was taking a shower. McDonald got into the shower with the complainant and again pressured the complainant to insert his penis into McDonald's anus. McDonald and the complainant were in the shower for approximately five minutes and then moved to the bed where McDonald again had the complainant insert his penis into McDonald's anus. The entire encounter lasted approximately fifteen minutes.

Upon returning home at the end of the weekend, the complainant did not tell his mother what had happened because he did not want to get the men into trouble. The complainant did, however, confide in a friend of the family. The complainant's mother eventually learned what had happened and immediately reported the incident to the Baytown Police Department. The police later arrested McDonald.

### Analysis

*Commitment Question*

■ In his first issue, McDonald contends the trial court erred in allowing the State, over his objection, to pose an improper commitment question to the venire

panel. At the beginning of voir dire, the State informed the prospective jurors that the case involved aggravated sexual assault, which is "penetrating the mouth, sexual organ or anus of a child under 14[, o]r the other way around, causing the child to penetrate or contact the mouth, sexual organ or anus of the defendant." The State then discussed with the venire members the "one witness rule"[1] and the concept of "delayed outcry"[2] without any objection from the defense. Thereafter, the following exchange occurred:

MR. WEISSFISCH: Okay. How many people—let me just ask you, each one of you, real quickly. Do you think it's likely that a child will make up allegations of sexual abuse or unlikely? We're talking about a child under 14. What do you think?

MR. SCOTT: I will object to the form of the question. Obviously, trying to lock the potential jurors into a particular situation.

THE COURT: Why don't you restate the question.

MR. WEISSFISCH: Just your general feeling. Do you feel that children likely will make up sexual abuse or unlikely?

MR. SCOTT: Please the Court. Same question. I object to it, locking the jurors into a particular situation.

THE COURT: I'll overrule it.

The State proceeded to ask each prospective juror individually whether he or she thought it was likely or unlikely that children would make up sexual abuse.

McDonald contends this question constitutes an improper commitment question. *See Standefer v. State*, 59 S.W.3d 177 (Tex.Crim.App.2001). According to McDonald, the State's question was tantamount to asking the venire members if they were likely to believe the one witness whom the State would call to testify.

Questions during voir dire are proper if they seek to discover a juror's views on an issue applicable to the case. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim.App.2002) (citing *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App.1985)). Voir dire examination permits the parties to assess the desirability of prospective jurors and to select a "competent, fair, impartial, and unprejudiced jury[.]" *Staley v. State*, 887 S.W.2d 885, 896 (Tex. Crim.App.1994) (citation omitted). Because a trial court has broad discretion over the process of selecting a jury, an appellate court should not disturb a trial court's ruling on the propriety of a particular question during voir dire absent an abuse of discretion. *Barajas*, 93 S.W.3d at 38.

An attorney may not, however, "attempt to bind or commit a venire member to a verdict based on a hypothetical set of facts." *Lydia v. State*, 109 S.W.3d 495, 497 (Tex.Crim.App.2003). "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer*, 59 S.W.3d at 179. Although these types of questions generally "elicit a 'yes' or 'no'

---

1. A prospective juror may be subject to challenge for cause if he indicates that he could not convict the defendant based on the testimony of one witness, even though he believes that witness beyond a reasonable doubt. *Lee v. State*, 176 S.W.3d 452, 460 (Tex.App.-Houston [1st Dist.] 2004, pet. granted) (citing *Castillo v. State*, 913 S.W.2d 529, 533 (Tex.Crim. App.1995)).

2. "Delayed outcry" means that in some cases, victims of sexual abuse do not reveal the abuse to anyone until much later. *See Gurka v. State*, 82 S.W.3d 416, 419–20 (Tex.App.-Austin 2002, pet. ref'd) (citing testimony regarding reasons for delayed outcry by young victims of sexual abuse).

answer, an open-ended question can be a commitment question if the question asks the prospective juror to set the hypothetical parameters for his decision-making." *Id.* at 180. Commitment questions that attempt to bind prospective jurors to a position, using a hypothetical or otherwise, are improper and "serve no purpose other than to commit the jury to a specific set of facts before the presentation of any evidence at trial." *Lydia,* 109 S.W.3d at 497.

■ In *Standefer,* the Texas Court of Criminal Appeals articulated a three-prong test for determining whether a voir dire question calls for an improper commitment. *Standefer,* 59 S.W.3d at 179–83. The first prong requires the trial court to decide whether a particular question is a commitment question. *Id.* at 179–81. If the court determines that a particular question is a commitment question, the second prong requires the court to consider whether the question leads to a valid challenge for cause. *Id.* at 181–82. If the question meets the "challenge for cause" requirement, the third prong requires the court to determine whether the question includes only those facts necessary to test whether a prospective juror is challengeable for cause. *Id.* at 182–83.

The question at issue in the present case is: "Do you feel that children likely will make up sexual abuse or unlikely?" In considering the first prong of the *Standefer* test, we conclude that this is not a commitment question. The question does not ask the venire members to resolve, or to refrain from resolving, an issue a certain way after being informed of a *particular* set of facts. *See Standefer,* 59 S.W.3d at 179. Rather, the question merely asks the prospective jurors whether they think it is likely or unlikely that children *generally* will fabricate allegations of sexual abuse. *See Vrba v. State,* 151 S.W.3d 676, 678–79 (Tex.App.-Waco 2004, pet. ref'd) (holding that question "What are some signs that somebody is intoxicated?" is not commitment question because "it seeks only the jurors' general views on signs of intoxication"). "An improper commitment question attempts to create a bias or prejudice in the venireman before he has heard the evidence, whereas a proper voir dire question attempts to discover a venireman's preexisting bias or prejudice." *Sanchez v. State,* 165 S.W.3d 707, 712 (Tex. Crim.App.2005). Here, the State's question attempts to discover whether any of the prospective jurors harbor a pre-existing bias or prejudice concerning the likelihood of children in general fabricating sexual abuse allegations. The question does not ask the prospective jurors to commit to any particular set of facts—let alone the facts of this case—and thus it is not an improper attempt to bind the jurors under *Standefer.*[3] Accordingly, we overrule McDonald's first issue.

*Improper Jury Argument*

In his second and third issues, McDonald contends two portions of the State's closing argument during the guilt-innocence phase of trial were improper and violated his right to a fair trial. McDonald first contends the following jury argument misrepresented Texas law: "Then what other evidence might we want? What about those porno tapes? Well, we can't get those. We can't get a search warrant to go in his house and get the porno tapes. Porno tapes aren't illegal

---

**3.** We note that in *Standefer,* the Texas Court of Criminal Appeals approved a question similar to the one at bar. *See Standefer v. State,* 59 S.W.3d 177, 183 n. 28 (Tex.Crim.App. 2001) (observing that "a question in a child-molestation case which inquires whether the juror believes that no child could/would lie about such a thing" is proper) (internal quotation omitted).

to have." According to McDonald, this statement misrepresents Texas law because the State could have seized the tapes if they had been instruments used in the commission of the crime.

McDonald, however, did not object to this argument. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. TEX.R.APP. P. 33.1(a)(1). "[A] defendant's failure to object to a jury argument . . . forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996); *see also Bias v. State*, 937 S.W.2d 141, 144 (Tex.App.-Houston [1st Dist.] 1997, no pet.) (holding that there is no issue presented for review when no objection is made, even though jury argument might be incurably harmful).

■ Citing to *Burke v. State*, 652 S.W.2d 788 (Tex.Crim.App.1983), McDonald asserts that the State's jury argument requires reversal because it is "manifestly improper." The Texas Court of Criminal Appeals, however, recently rejected a similar argument in *Threadgill v. State*, 146 S.W.3d 654 (Tex.Crim.App. 2004). In *Threadgill,* the appellant relied on *Janecka v. State,* which the Texas Court of Criminal Appeals decided after *Cockrell,* and in which the court stated, " '[w]ithout timely and specific objections, the question of allegedly improper closing arguments is not preserved for review unless manifestly improper.' " *Threadgill,* 146 S.W.3d at 670 (quoting *Janecka v. State,* 937 S.W.2d 456, 474 (Tex.Crim.App. 1996)). The *Threadgill* court observed that "[i]f the Court had intended in *Janecka* to reinstate the pre-*Cockrell* rule just five days after the mandate issued in *Cockrell,* it would have expressly stated so. This Court has followed *Cockrell* many

times." *Id.* (citation omitted). After noting that the statement in *Janecka* was mere dictum, the Court of Criminal Appeals announced that *"Cockrell* remains the law." *Id.* Accordingly, we follow *Cockrell* and hold that, by failing to object, McDonald forfeited his right to complain about the State's jury argument on appeal.

■ In his third issue, McDonald contends the following portion of the State's closing argument was improper, inflammatory, and prejudicial:

Sometimes one or two of you may try to take the easy way out. You get an idea. I've heard it happen before, seen it happen before.

We're going to say not guilty, let the guy go. But we'll tell that prosecutor, hey, we believe the child. We just didn't think it was beyond a reasonable doubt. And could you please tell him we believe him so he doesn't feel bad.

Don't do that. You want to come out here and tell me afterwards when we talk that, hey, we thought he was a big liar, he made up the whole thing, that's why we found him not guilty. That's fine. That's what you're supposed to do. You think he's lying, let this guy go.

Don't say, we knew it happened, we believed it happened, we believed the child. But we didn't think it was beyond a reasonable doubt.

Because if you believe it happened, that means the evidence, the testimony that you heard which is evidence is beyond a reasonable doubt. It was strong enough to convince you, to make you believe it happened. So that is beyond a reasonable doubt. That's what it means. Okay.

. . . .

You either say, [complainant], we don't believe you. We think you're a liar. We don't care what you've been

through. We don't care about all of you. Just get out of here, we don't want to see you again.

Or you can say we appreciate you having the courage to come forth. We're sorry for everything you've been through. And we do believe you and we're going to return a verdict that does justice in this case.

McDonald contends this argument was improper because it inflamed the jurors' emotions and "beseech[ed] them to render a verdict based on [the] emotional effect it would have on a young boy rather than on the evidence."

Again, however, McDonald failed to object to this jury argument. In his brief, McDonald acknowledges that he failed to object, but asserts that the failure to object is not fatal when the State's argument is so prejudicial that no instruction could cure the harm.

The Texas Court of Criminal Appeals rejected this argument in *Cockrell*. Specifically, the court held as follows:

In this case, appellant's complaint on appeal is that the prosecutor's ... arguments exceeded the permissible bounds of jury argument and that the error in these arguments could not have been cured by an instruction to disregard. However, a defendant's "right" not to be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by a failure to insist upon it. Therefore, we hold a defendant's failure to object to a jury argument ... forfeits his right to complain about the argument on appeal. Any prior cases to the contrary ... are expressly overruled. Before a defendant will be permitted to complain on appeal about an erroneous jury argument *or that an instruction to disregard could not have cured an erroneous jury argument*, he will have to show he objected and pursued his objection to an adverse ruling.

*Cockrell*, 933 S.W.2d at 89 (emphasis added) (internal citations omitted); *accord Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex.Crim.App.2002) (expressly declining to overrule *Cockrell* although appellant asserted State's reference to him as "despicable piece of human trash" in closing argument was so inflammatory and prejudicial that it could not be cured by instruction to disregard and thus it would be "pointless" to require appellant to object to preserve error); *Boston v. State*, 965 S.W.2d 546, 549 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (relying on *Cockrell* to reject appellant's assertion that objection was not necessary to preserve error because State's argument was so prejudicial that instruction to disregard could not have cured harm).

Therefore, we hold that McDonald forfeited his right to complain about the State's closing argument by failing to object at trial. Accordingly, we overrule McDonald's second and third issues.

## Conclusion

We conclude that McDonald's complaints on appeal are without merit and therefore affirm the judgment of the trial court.