

NUMBER 13-08-00468-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GUADALUPE JARAMILLO,                                Appellant,

v.

THE STATE OF TEXAS,                                     Appellee.

On appeal from the 103rd District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Benavides**

Guadalupe Jaramillo appeals his convictions for attempted capital murder,[1] burglary

---

[1] *See* TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 2009) (capital murder); *id.* § 15.01 (Vernon 2003) (criminal attempt).

of a habitation,[2] deadly conduct,[3] and two counts of aggravated robbery.[4]  After a jury trial, the jury assessed punishment at seventeen years' confinement in the Texas Department of Criminal Justice—Institutional Division for each offense except for the deadly conduct conviction, for which Jaramillo received ten years' confinement.  The sentences were ordered to run concurrently.

By five issues, Jaramillo argues that:  (1) the evidence is legally insufficient to support the jury's finding of attempted capital murder; (2) the evidence is factually insufficient to support the jury's finding of attempted capital murder; (3) the State improperly commented on Jaramillo's right to remain silent in its closing argument during the guilt/innocence phase of trial; (4) the State improperly discussed parole laws in its closing argument during the punishment phase of trial; and (5) Jaramillo received ineffective assistance of counsel because his trial attorney failed to move for a directed verdict.  We affirm.

## I. SUFFICIENCY OF THE EVIDENCE[5]

By his fourth and fifth issues, Jaramillo argues that the evidence at trial was legally and factually insufficient to support the jury's verdict on the attempted capital murder charge because the State failed to prove intent.  For the reasons that follow, we disagree.

---

[2] *See id.* § 30.02 (Vernon 2003) (burglary).

[3] *See id.* § 22.05 (Vernon 2003) (deadly conduct).

[4] *See id.* § 29.03 (Vernon 2003) (aggravated robbery).

[5] As this is a memorandum opinion and the parties are familiar with the facts of the case, we will not recite them here except as necessary to advise the parties of this Court's decision and the basic reasons for it.  *See* TEX. R. APP. P. 47.4 .

2

## A.    Background Facts[6]

Lionel Perez testified that on January 13, 2007, at approximately 4:00 a.m., his home was invaded by three men. Two of the men entered his bedroom, where he and his wife were sleeping, and one of the men pointed a gun at his head. The armed men took money and jewelry from the home. Perez stated that after he gave the men his money and jewelry, the men ran out of the house and down the street.

Perez chased them outside, then he ran back into his bedroom, put on his shorts, grabbed his truck keys, and went back outside. He saw a maroon Dodge mini-van pull up, pick up the three men, and turn around in a cul-de-sac at the end of his street. Perez got in his truck and followed the mini-van. From his truck, Perez called the police, who ordered him to return home. Perez gave a description to the police of the two men who entered his bedroom, but he could not identify the other man in the house or the man driving the mini-van. On cross-examination, defense counsel confirmed with Perez that his description of the two men that came in his bedroom matched the description of Fidencio Hernandez and Juan Martinez, who were charged along with Jaramillo for the crimes.

Odelia George, Perez's stepdaughter, testified that at the time of trial, she was a junior in high school. She stated that she was sleeping in her bedroom on the night of the home invasion. She saw the two men who went into Perez's bedroom and another man with a bag over his head. Odelia explained that from her bedroom she could see a fourth

---

[6] The convictions in this case arise from a home invasion that occurred in San Benito, Texas, on January 13, 2007. Jaramillo, along with three other men, were charged with burglary, deadly conduct, and aggravated robbery based on the home invasion. The facts surrounding the charge of attempted capital murder occurred when the men were fleeing from the scene of the home invasion. Jaramillo does not challenge the legal or factual sufficiency of the evidence supporting the convictions arising from the home invasion itself—thus, we will discuss the home invasion only briefly and focus our discussion of the facts on the events that occurred immediately thereafter. *See id.*

man who came in the front door and yelled that the cops were on their way. She testified that she saw the right side of his profile when he ran in the house and the left profile when he ran out. At trial, Odelia identified Jaramillo as this fourth man.

Officer Isaac Vasquez testified that he is a sergeant with the San Benito Police Department. Officer Vasquez stated that on January 13, 2007, he received a call from dispatch regarding a home invasion. He was informed that a maroon van with several armed suspects had left the scene, so he attempted to locate the van in the area surrounding Perez's home.

Officer Vasquez proceeded to Stenger Street and East Highway 77, where he noticed a dark-colored Dodge van stopped at a stop sign. As the van passed him, Officer Vasquez turned on a spot-light on the top of the back door of his vehicle, enabling him to see off to the side. At that time, Officer Vasquez was able to see that the van was maroon and that a light-complected, short-haired male with a moustache was driving the vehicle. Officer Vasquez identified the driver as Jaramillo.

Officer Vasquez made a u-turn and began to follow the van. He ran the plates on the vehicle and then followed the van until back-up could arrive. Once back-up arrived, he turned on his overhead lights. Officer Vasquez testified that he had a mobile vision camera on his truck, which was able to take video, but the sound was not functioning. He turned on his camera right before he attempted to stop the vehicle.

Even though the officers turned on their lights and their sirens, the van did not stop. The video showing the pursuit was played for the jury, and Officer Vasquez narrated most

4

of it before Jaramillo's counsel objected.[7]  Officer Vasquez testified that Jaramillo was "braking, and trying for me, I guess, to hit him from behind or trying to ditch the car, seeing if he had enough time to ditch the car, but he couldn't."  Jaramillo was swerving in and out on the roadway.  Officer Vasquez testified that at some point during the pursuit, "they started shooting."  He testified that right after the shooting started, then "you see a—I get back a little bit."

The pursuit continued, and after further chase, the van pulled off onto a grassy area.  Jaramillo and the other men exited the van and ran off.  Officer Vasquez stated that after the van pulled over, the officers went to the van to make sure that no one else was in the vehicle, but did not discover any of the suspects.  He testified that the officers tracked the suspects into a cane field, but the underbrush was so thick that they could not pass through it.

On direct examination by the State, Officer Vasquez testified as follows about the shots that were fired:

Q.    Now, you said that during this chase, shots were fired—

A.    Yes, sir.

Q.    —from the van?

A.    Yes, sir.

---

[7] Officer Vasquez narrated part of the video, and defense counsel eventually objected to the narration. The trial court sustained the objection, but defense counsel did not ask the trial court to strike the previously admitted testimony or instruct the jury to disregard it.  *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1) (requiring a timely objection or motion to strike); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); *Land v. State*, 890 S.W.2d 229, 234 (Tex. App.–Beaumont 1994, no pet.) ("The objection must be timely; that is, the defense must have objected to the evidence, if possible, before it was actually admitted. If this was not possible, the defense must have objected as soon as the objectionable nature of the evidence became apparent and must have moved to strike the evidence, that is, to have it removed from the body of the evidence the jury is allowed to consider.").  Thus, we consider Officer Vasquez's testimony that was admitted before the objection was sustained.

Q.   Were you able to hear the shots fired?

A.   Yes, sir.

Q.   Were you able to see anything or did you just hear it?

A.   Just smoke coming from the van.

Q.   Okay.   And was that—you mentioned the smoke.   You're talking about the smoke from the gun barrel?

A.   Yes, sir.

Q.   All right.   And that's visible if you look on the tape?

A.   Yes, sir.

Officer David Ortega also testified at trial regarding the pursuit and the shots fired from the van.  Officer Ortega's car was also equipped with a video recorder, but this video had sound.  The video was played to the jury.  After the video, Officer Ortega testified on direct examination about the shots fired:

Q.   I'm sorry.  We heard a voice on there calling out "Shots fired!"  Do you know who that was?

A.    That was my voice, sir.

Q.   That was your voice?  Were you able to clearly hear the shots fired?

A.   Yes, sir.

Q.   You know what a gun sounds like?

A.   Yes, sir.

Q.   About how many shots did you hear?

A.   I want to say five, sir.  About five.

Q.   Were you able to see any of the muzzle flashes or anything, from the ground?

6

A.     I really couldn't, sir, because I believe the truck was in front and they were just changing lanes. But I know when I heard it, when I saw the visual on the right side of the roadway, that's when I heard the pops.

Jesus Alejandro Garica Mandujano testified that he participated in the robbery and pleaded guilty to the charges against him as part of a plea agreement. He testified that Jaramillo is his uncle and was the driver of the van on the night of the robbery. On direct examination by the State, when asked who was "shooting the gun at the police officers," Mandujano replied that it was Hernandez.

Based on this evidence, the jury convicted Jaramillo of attempted capital murder under the law of parties. TEX. PENAL CODE ANN. §§ 7.02, 19.03(a)(1) (Vernon Supp. 2009).

**B.     Standard of Review and Applicable Law**

To assess whether the evidence supporting a verdict is legally sufficient, we consider all the evidence in the record in the light most favorable to the jury verdict and determine whether a rational jury could have found the defendant guilty of all the elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). "In reviewing the sufficiency of the evidence, we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App.1985)). While each fact may not point directly and independently to the appellant's guilt, we may affirm "as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence alone may be enough to establish guilt. *Id.*

When reviewing the evidence for factual sufficiency, we review the evidence in a neutral light to determine whether (1) the evidence is so weak as to render the jury verdict clearly wrong and manifestly unjust or (2) whether the evidence supporting the verdict is so outweighed by the great weight and preponderance of the contrary evidence as to render the verdict clearly wrong and manifestly unjust. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). We must show great deference to a jury verdict. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). "An appellate court judge cannot conclude that a conviction is 'clearly wrong' or 'manifestly unjust' simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict." *Id.* at 417.

We measure the legal and factual sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Grotti*, 237 S.W.3d at 280-81. To hold a defendant criminally liable for capital murder under section 19.03(a)(1) of the Texas Penal Code, the State must prove that the defendant "commit[ed] murder as defined under Section 19.02(b)(1) and . . . the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman . . . ." TEX. PENAL CODE ANN. § 19.03(a)(1). Section 19.02(b)(1), incorporated into the capital murder provision, provides the culpable mental state for the crime, defining murder as "intentionally or knowingly" causing the death of an individual." *Id.* § 19.02(b)(2) (Vernon Supp. 2009). "Intentional" and "knowing" conduct are further defined as follows:

(a)    A person acts intentionally, or with intent, with respect to the nature

8

of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b)     A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(a)-(b) (Vernon 2003).

In this case, the murder was not completed; thus, Jaramillo was accused of attempted capital murder under the law of parties. *Id.* §§ 7.02, 15.01(a) (Vernon 2003). Under the criminal attempt statute, "[a] person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a) (Vernon 2003).

## C.     Analysis

Jaramillo asserts that the evidence is legally and factually insufficient to prove intent because Officer Vasquez never stated that anyone in the van was shooting at him, but rather, only testified that shots were fired from the van. He argues that "[i]t could be inferred by the jury that shots were in this officer's direction; however, the officer did not say this, and such an inference is not supported by the evidence presented at trial, nor by the victim's statements." He argues that no other officer testified that the shots were fired at the officers. For this reason, he argues that the jury could infer two equally plausible scenarios: that the shots were fired in the officers' director or that the shots were not made in their direction. Thus, there is no evidence of intent.

Specific intent to kill may be inferred from the use of a deadly weapon, unless the

9

manner of its use makes it apparent that death or serious bodily injury could not have resulted. *Godsey v. State*, 719 S.W.2d 578, 580-81 (Tex. Crim. App.1986). When a person uses a deadly weapon in a deadly manner, intent to kill can be inferred. *Id.* at 581. In this case, it was enough for the jury to believe that Hernandez acted "knowingly," that is, that he was aware that his conduct is reasonably certain to result in the death of a police officer. *See Rojas v. State,* 171 S.W.3d 442, 447 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd) (holding that although witnesses only testified that they saw the front-seat passenger of a mini-van fire a gun in the general direction of a group of people, the evidence was legally and factually sufficient to support "knowing" culpable mental state in capital murder conviction).

Jaramillo does not address two key pieces of evidence in the record. First, Jaramillo ignores Officer Vasquez's testimony that because the shots were fired, he slowed down and backed away from the van during the pursuit. This raises an inference that the shots were being fired in Officer Vasquez's direction and that he slowed down to avoid being hit. Second, Mandujano testified that Hernandez was "shooting the gun at the police officers" during their attempt to escape. Thus, contrary to Jaramillo's arguments, there was testimony from Officer Vasquez and Mandujano that the shots were fired in the direction of the officers. We hold this evidence was legally and factually sufficient to support a finding that Hernandez acted knowingly with respect to the consequences of his actions. *See id.* Because Jaramillo does not contest his criminal responsibility for Hernandez's actions under the law of parties, it is also sufficient to support his own conviction for attempted capital murder. *See* TEX. PENAL CODE ANN. § 7.02. Accordingly, we overrule

Jaramillo's fourth and fifth issues.

## II. IMPROPER ARGUMENT

By his first[8] and second[9] issues, Jaramillo argues that the prosecutor exceeded the

---

[8] Jaramillo's first issue seeks a new punishment trial, arguing that the State improperly suggested to the jury the leniency of parole laws and suggesting that the jury impose a harsh sentence. The argument is based on the following statements during the State's closing argument:

There's some talk in here, also, in this jury charge about the parole law, which is a very, very complicated thing. I don't even think most lawyers understand it. I don't think anybody really understands it. The parole law just doesn't make any sense at all. It's very arbitrary.

I would ask you to pay very close attention on—I think it's the third page near the bottom. It's talking about the type of offense that we're dealing with here, that in approximately half the time that you sentenced him to, he would be eligible for parole. Pick a number for discussion, like fifty years, say. Say you assess fifty years. He would be eligible for parole in half that calendar time.

It says here—and I don't want you totally confused, but it says, "Parole, actual time served equals one-half of the sentence imposed or thirty years, whichever is less."

Well, the thirty years, whichever is less, has to do with if you sentence him to in excess of sixty years, for purposes of parole. That's the one thing we might know, is that anything above sixty for parole purposes is kind of not exactly the same, but sort of the same. So I think that's what they say, it's thirty years, one-half or thirty years, whichever is less.

It says here, the eligibility for parole does not guarantee that he will be given parole, only that he is eligible to apply for parole. So that's something, you know, ya'll [sic] look at very carefully. The explanation is here in the charge. Those are the—that's exactly what it means.

I guess right before I close here I wanted to point out—I had to ask this question of both the defendant's wife and his son. It brought me no joy, I can assure you. And I understand that they come before you and they're asking to give the husband/father probation in what I consider to be a very serious case. To me, that's ridiculous, but, I guess, you know, we all have opinions. That's the great thing about our country. Everybody is entitled to their opinion. To me, this is just too bad a crime. I can't find it in my heart to give serious consideration to probation. Maybe I'm wrong. I've been wrong before, and I'm probably going to be wrong again, but I think that you need to really and truly ask yourself, if the tables had been turned, would they be sitting up here asking you, you know, to give him probation?

[9] Jaramillo's second issue argues that the State commented on his right to remain silent in its closing argument during the guilt/innocence phase of trial by making the following statements:

How do we know that this man was involved? Well, forget all—for right now, just for purposes of our discussion right now, forget all about what the co-defendants have said. Let's talk about the people who have no reason to lie.

bounds of permissible jury argument during both phases of the trial. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) ("[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement."). The State argues that Jaramillo waived these issues by failing to object to the prosecution's argument in the trial court. We agree with the State.

In *Cockrell v. State*, the Texas Court of Criminal Appeals held that an objection is necessary to preserve an argument regarding improper jury argument. 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). This is true even though the trial court could not have cured the error with an instruction. *Id.* Jaramillo's attorney did not object a single time during the prosecution's argument. Under these circumstances, nothing is preserved for our review. *Id.*; *see Threadgill v. State,* 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *McDonald v. State,* 186 S.W.3d 86, 91 (Tex. App.–Houston [1st Dist.] 2005, no pet.). We overrule Jaramillo's first and second issues.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, Jaramillo argues that he received ineffective assistance of counsel because his trial counsel failed to move for a directed verdict. We apply the two-pronged *Strickland* analysis to determine whether counsel's representation was so deficient that it violated a defendant's constitutional right to effective assistance of counsel.

---

The girl who was fourteen years old at the time, Odelia. She described it to the police officer. The man was at the front door saying, "Cops are coming. Let's get out of here!" Then they've got the audacity to come in here and tell you he wasn't involved, he didn't have anything to do with it. Don't let them poke your eyes.

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.); *see Strickland v. Washington*, 466 U.S. 668, 684 (1984). An appellant claiming a *Strickland* violation must establish that (1) "his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different." *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687.

We afford great deference to trial counsel's ability—"an appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Jaynes*, 216 S.W.3d at 851. The appellant must prove both elements of the *Strickland* test by a preponderance of the evidence. *Munoz v. State*, 24 S.W.3d 427, 434 (Tex. App.–Corpus Christi 2000, no pet.).

Jaramillo argues that his trial counsel's performance was deficient because he failed to request a directed verdict on the attempted capital murder charge because the evidence was insufficient to show specific intent. He argues that there is no plausible trial strategy that could support his counsel's failure to move for a directed verdict. Jaramillo, however, has failed to prove by a preponderance of the evidence that absent the deficient performance, the outcome at trial would have, in reasonable probability, been different.

"[E]ven if the traditional practice calls for defense counsel to move for directed verdict on the grounds of insufficient evidence, the 'possibility' that the motion may have been granted is not sufficient to show that counsel's failure to make the motion was deficient performance that prejudiced the defense." *McGarity v. State,* 5 S.W.3d 223, 229

13

(Tex. App.–San Antonio 1999, pet. ref'd) (citing *Cheak v. State*, 757 S.W.2d 172, 173-74 (Tex. App.–Amarillo 1988, no pet.)). Merely alleging that an omission raised the possibility of a different result is insufficient. *Id.* Rather, the appellant must show a "reasonable probability," which requires much more. *Id.* (citing *Strickland*, 466 U.S. at 693-94).

We have already held that the evidence supporting that charge was legally and factually sufficient; therefore, Jaramillo has not shown that a motion for a directed verdict would have resulted in a different outcome. *Id.* (holding that appellant failed to prove prejudice under *Strickland* based on trial counsel's failure to move for a directed verdict where the evidence was legally and factually sufficient). Additionally, while Jaramillo's issue refers to the "other counts" generally, he does not argue why the evidence supporting the other counts was insufficient. *Id.* (noting that appellant failed to point out which element the State failed to prove and therefore, failed his burden under *Strickland*). Accordingly, he has not met his burden under *Strickland* to show that a motion for a directed verdict would have resulted in a different outcome. We overrule Jaramillo's third issue.

## IV. Conclusion

Having overruled all of Jaramillo's issue, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
See Tex. R. App. P. 47.2(b)

Delivered and filed the
29th day of June, 2010.