**Opinion issued August 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00231-CR

———————————

**NELSON OKWUOLISA ILODIGUWE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1361714**

## MEMORANDUM OPINION

Appellant Nelson Okwuolisa Ilodiguwe was charged with the felony offense of sexual assault by compelling the complainant to submit or participate by the use of physical force or violence. TEX. PENAL CODE § 22.011(a)(1), (b)(1). Ilodiguwe pleaded not guilty. A jury found him guilty and assessed punishment at four years

in prison and a $10,000 fine. He timely filed a motion for new trial. The motion for new trial was denied without a hearing, and this appeal followed.

On appeal, Ilodiguwe argues that (1) the evidence was legally insufficient to support his conviction; (2) the trial court abused its discretion by denying him a hearing on his motion for new trial; (3) he received ineffective assistance of counsel; and (4) the trial court erred by overruling his objections to the prosecutor's closing argument. We affirm the trial court's judgment.

## Background

Complainant S.L. was working as a prostitute when Ilodiguwe drove up to her and asked if she needed a ride and wanted to "have some fun." S.L. got into the van, signaling that she agreed to the transaction. Although S.L. usually took customers to a nearby motel, Ilodiguwe suggested that they go just a few blocks away to his office building.

The two arrived at the office building at approximately 3:00 a.m., and Ilodiguwe used a card to access a suite on the first floor of the building. Once inside the suite, he told S.L. to sit down while he went outside to make a phone call. When he came back, he showed her a badge and claimed to be a law enforcement officer. S.L. started to get up, but he told her to calm down. He told her that would not take her to jail, but she needed to "show" "something" before he would let her go. She complied.

2

S.L. knew Ilodiguwe was not a police officer, but she felt threatened because he was bigger than she was. She attempted to escape by pushing the door open. She made it into the hallway, but a struggle ensued and Ilodiguwe pulled her back into the suite by grabbing her arm. More than once, S.L. asked Ilodiguwe to let her go. She told him, "You don't have to do it like this," while inside the suite, and again she begged to be released as he grabbed her arm in the hallway.

Once back inside the suite, Ilodiguwe pushed S.L. down on her knees and forced her to perform oral sex. Next, he told her to lie down and remove her underwear. Ilodiguwe then put his full body weight on top of S.L. and put his penis into her vagina. Because he was so large, she was unable to move or otherwise escape. Throughout this process, S.L. cried and begged Ilodiguwe to stop. He told her to "just be quiet," "shut up," and "just take it."

Ilodiguwe became frustrated by S.L.'s crying, got up, and walked around. Now able to move, S.L. got close enough to her purse to retrieve her phone and dial 911. Although she did not speak to the 911 operator, she hoped that law enforcement would be able to trace her location based on the phone call. So she dropped the phone into her purse without terminating the phone call. The phone remained on for the remainder of the encounter, which resulted in an audio recording of the events.

At the end of the encounter, Ilodiguwe gave S.L. cash, which she accepted. The two left the building together, and Ilodiguwe drove away in the van as S.L. stayed behind. Once Ilodiguwe had left, S.L. called 911 again and told the operator that she had been raped. When the responding officer arrived at the office building, he observed S.L. crying, upset, and in a state of panic. S.L. explained to the officer that she had been working as a prostitute, but she maintained that the encounter was a sexual assault, not a "transaction gone bad." At the officer's request, S.L. agreed to undergo a sexual assault examination at a local hospital.

S.L. told the nurse who conducted the sexual assault examination that Ilodiguwe forced her on the floor and raped her. The examining nurse did not find evidence of trauma to S.L.'s genitals, but she observed abrasions to the neck, shoulder, and knee that appeared to have been sustained within the previous 12 to 24 hours. At trial, the examining nurse testified that the lack of genital trauma is not inconsistent with sexual assault.

After reviewing security logs for the card-access doors and surveillance video from the office building, as well as the audio of the first 911 call, investigators asked S.L. to identify her assailant from a photo spread. S.L. positively identified Ilodiguwe. The investigators subsequently obtained and executed an arrest warrant for Ilodgiuwe.

Ilodiguwe was charged by indictment with the felony offense of sexual assault, namely by compelling S.L. to "submit and participate by the use of physical force and violence." The jury found Ilodiguwe guilty and the trial court sentenced him to four years in prison and a $10,000 fine. He timely filed a motion for new trial and a notice of appeal. The motion for new trial was denied by operation of law.

**Analysis**

## I. Sufficiency of the evidence

In his first and third issues, Ilodiguwe argues that the evidence at trial was legally insufficient to support his conviction for the felony offense of sexual assault.

A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE § 22.011(a)(1)(A). A sexual assault is without another person's consent if the actor compels the person to submit or participate by the use of "physical force or violence." *Id*. § 22.011(b)(1).

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The standard is the same for both direct and circumstantial evidence cases. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* We give deference to the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*

With respect to sexual assault under section 22.011, the Legislature has stated that a conviction may be supported by the uncorroborated testimony of the complainant if she "informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred." TEX. CODE CRIM. PROC. art. 38.07(a). This provision applies to this case, in which S.L. reported the alleged sexual assault to law enforcement on the night of the events in question.

The evidence at trial included testimony from S.L., the first responding police officer, the nurse who conducted the sexual assault examination, and Ilodiguwe. Numerous exhibits were also entered into evidence, including audio recordings of S.L.'s calls to 911, video footage taken from security cameras at the office building, and the nurse's examination report. Ilodiguwe testified that he

6

penetrated S.L. orally and vaginally, and he does not dispute that he did so intentionally or knowingly. Instead, Ilodiguwe challenges the sufficiency of the evidence in two ways. First, he argues that the evidence did not demonstrate that he used both "physical force and violence" to compel S.L. to submit or participate, as alleged in the indictment. Second, he argues that the evidence is nevertheless insufficient to support a finding that the sexual acts were without consent because there is no evidence of either physical force or violence.

## A. Proof of physical force and violence as alleged in indictment

Ilodiguwe's first argument—that the State must prove both physical force and violence—is not based on the essential elements of sexual assault under section 22.011, which specifies that a sexual assault is without consent if an actor compels a person to submit by the use of physical force "or" violence. *See* TEX. PENAL CODE § 22.011(b). Rather, Ilodiguwe argues that the State had to prove both physical force and violence because it pleaded both in the indictment. The indictment alleged that Ilodiguwe had sex with S.L. without her consent when he compelled her to submit by the use of "physical force and violence." But the State may plead in the conjunctive and charge the jury in the disjunctive. *Cada v. State*, 334 S.W.3d 766, 771 (Tex. Crim. App. 2011). Therefore, the evidence is sufficient to support Ilodiguwe's conviction if the proof establishes that he used either physical force or violence to compel S.L. to submit or participate. *See id.*

7

## B. Finding that sexual assault was without consent

Ilodiguwe also makes numerous challenges to the sufficiency of the evidence to establish a lack of consent by S.L. Many of his challenges do not specifically concern whether the evidence would allow a jury to find the essential elements of the offense beyond a reasonable doubt, but instead generally address the weight and credibility of the testimony and evidence. The rest of his challenges identify numerous pieces of evidence that he contends demonstrate S.L.'s consent.

Initially, Ilodiguwe attacks the weight and credibility of S.L.'s testimony because she was working as a prostitute and had been convicted for other offenses. He further asserts that the allegations in this case were fabricated by S.L. to "impress her pimp by calling police to allege she was raped." These arguments are largely predicated on his own testimony at trial, in which he testified that S.L. asked to call her pimp during the middle of the encounter in the suite. He further testified that, at the end of the encounter, he offered to drive her back to where he picked her up, but she refused and claimed to be waiting for her pimp. Ilodiguwe's testimony in this regard was disputed by S.L., who stated unequivocally that she was not working for a pimp at the time of the offense. Ilodiguwe contends that S.L.'s testimony cannot be credited because she has previously been convicted for prostitution, theft, and a "false alarm report." These prior convictions were discussed in depth.

Similarly, Ilodiguwe argues that the audio of the first 911 call, recorded from S.L.'s phone inside her purse as the offense occurred, was not credible. At multiple points in his brief, he asserts that the call was made at a different time than the alleged offense. He further contends that the tape was inadmissible because it had no date stamp. Finally, he argues that the audio recording depicts a conversation between S.L. and her pimp, not involving him. To support this argument, he observes that more than two voices can be heard on the 911 recording.

We note, first, that our sufficiency review encompasses "all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see Juarez v. State*, 409 S.W.3d 156, 162 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Therefore we consider the audio recording of the 911 call, which was admitted without objection at trial. While Ilodiguwe asserts that the 911 call contained no time stamp and was made after the time of the offense, the record shows that each audio recording begins with a computerized voice reciting a precise date and time. For example, the first 911 call begins by stating the time as 3:13 a.m., which is consistent with the security card access logs indicating that the suite in which the offense occurred was accessed at 3:06 a.m. Ilodiguwe does not assert that these

9

time stamps are falsified in any way, nor does he identify any evidence that would require such a determination.

With respect to Ilodiguwe's further contention that the 911 call depicted voices other than his own, and thus required a conclusion that the audio was not evidence of any interaction he had with S.L., we note that S.L. positively identified Ilodiguwe's voice on the recording. Although the audio is muffled, presumably because the phone from which the call was made was inside a purse, S.L. explained that Ilodiguwe's voice could be heard saying to her, "shut up, be quiet," and "come on, just lay there." According to S.L., it was her voice on the recording crying and pleading "please stop, you don't have to do this," and "I have kids." Other voices, which can be clearly heard, identify themselves as "Houston 911" and ask if someone needs medical, police, or fire assistance. As the call continues, the other voices can be heard talking amongst themselves, along with sounds consistent with typing on a keyboard. On this record, the evidence and testimony permitted a rational jury to conclude that the recording depicted an ongoing sexual assault without consent while 911 operators simultaneously worked to identify the location of the call and send police to the scene. Such an interpretation of the evidence was also supported by the trial testimony of the responding officer, who stated that he was sent to the location of the offense once the 911 operators had identified the location of the source of the call.

Though argued in several ways, each of Ilodiguwe's arguments merely contends that the jury mistakenly credited S.L.'s testimony over his own, or drew an incorrect inference from the evidence. We reject all of Ilodiguwe's arguments asking us to re-evaluate the credibility of the witnesses or draw different inferences from the evidence than the jury did. *See Hooper*, 214 S.W.3d at 13. We determine only whether the evidence, viewed in the light most favorable to the verdict, allowed a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2781.

Ilodiguwe relies on numerous pieces of evidence that he contends demonstrate that S.L. consented to sexual intercourse. He identifies portions of the video evidence from the security cameras that show S.L. walking alongside and accepting money from him as they left the building. He contends that nurse's examination at the hospital, which did not find evidence of genital trauma, conclusively establishes that the sex was consensual. He emphasizes generally that no physical evidence demonstrated that he compelled S.L. to submit to intercourse through the use of physical force or violence.

Nevertheless, S.L.'s testimony allowed a jury to find that Ilodiguwe compelled her to submit through the use of physical force. She testified that Ilodiguwe refused to let her leave, forcibly pulling her back into the room when she tried to escape. She testified that, after forcing her to perform oral sex,

11

Ilodiguwe put his full body weight on top of her and penetrated her vaginally. She told him repeatedly to stop, but she could not move or get away because he was so large. As a result, S.L.'s testimony was sufficient to allow a rational jury to conclude beyond a reasonable doubt that the sexual assault was without consent because Ilodiguwe compelled S.L. to submit by the use of physical force. *See* TEX. CODE CRIM. PROC. art. 38.07(a); *Brooks*, 323 S.W.3d at 912. At most, the evidence adduced by Ilodiguwe could have allowed the jury to draw different inferences. *Hooper*, 214 S.W.3d at 13.

Viewing the evidence in the light most favorable to the verdict, a rational fact finder could have found that Ilodiguwe committed the offense of sexual assault beyond a reasonable doubt. *See* TEX. PENAL CODE § 22.011; *Jackson*, 443 U.S. at 319; 99 S. Ct. 2781, 2789. We overrule Ilodiguwe's issues challenging the legal sufficiency of the evidence.

## II.  Closing argument

In his fifth issue, Ilodiguwe contends that the trial court erred by overruling his objections to the State's closing argument during the sentencing phase of the trial.

Proper jury argument generally must occupy one of the following areas: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea

for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Acosta v. State*, 411 S.W.3d 76, 93 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In reviewing whether jury argument falls within one of these four areas, we consider the argument in light of the entire record. *Acosta*, 411 S.W.3d at 93. Even if improper, the argument does not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new harmful facts to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Acosta*, 411 S.W.3d at 93.

In his brief, Ilodiguwe quotes several portions of the prosecutor's closing argument during the sentencing phase. Yet Ilodiguwe objected to only two portions of that argument. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). Failure to object at trial to a jury argument forfeits an appellant's right to complain about the argument on appeal. *McDonald v. State*, 186 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Therefore, Ilodiguwe forfeited his right to complain about the portions of the prosecutor's argument as to which he objected at trial. We address only the remaining two portions of jury argument that Ilodiguwe preserved for appellate review. *See* TEX. R. APP. P. 33.1.

The first statements to which Ilodiguwe objected occurred during an exchange about probation as an option for punishment:

Prosecutor:          First I want to talk about probation. What probation means [is] basically you're grounded. Basically you're grounding him. No restriction on where you can go eat, go to work, who you can hang out with. Basically we're just saying just abide by the rules that all of us in here abide by on a daily basis and you don't have to go to prison. It basically means you're grounded for this. Okay.

Defense:             Objection, Judge, misstates what's in the jury charge as to basic conditions of community supervision.

Court:               Overruled.

Ilodiguwe asserts that the prosecutor's statements misstated the conditions of community supervision and confused the jury, causing them to choose the greater punishment of imprisonment and a fine.

Viewed in light of the entire record, the prosecutor's comments served as a summation of the conditions of community supervision listed in the jury charge on punishment. The charge stated that if the jury selected community supervision as its recommendation for punishment, the trial court may impose various conditions which, if violated, would permit the court to revoke community supervision. Among other things, the possible conditions included that the defendant commit no offense against the laws of this or any other State, avoid persons or places of disreputable or harmful character, work faithfully at a suitable employment, and

14

remain within a specified place. As the prosecutor described, the possible conditions did not restrict where Ilodiguwe could go to eat, where he could work, or who he could "hang out with." Thus, the prosecutor's statements concerning the details of community supervision in this case were a proper summation of the law in the jury charge. *See Guidry*, 9 S.W.3d at 154; *State v. Renteria*, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998) ("There is no error in correctly arguing the law, even if the law is not included in the court's charge."). Moreover, to the extent that Ilodiguwe objects to the prosecutor's statement that community supervision under such conditions amounted only to "grounding him," such an argument was permissible as a plea for law enforcement. *See Lugo v. State*, 732 S.W.2d 662, 664 (Tex. App.—Corpus Christi 1987, no writ) (holding that prosecutor's argument that probation "would be a slap on the wrist to the Defendant, would be a slap in the face to law enforcement in this community" was permissible as plea for law enforcement).

Next, Ilodiguwe asserts that the trial court erred by overruling his objection to the following argument:

| Prosecutor: | So earlier when he was talking about and that's the thing I was actually quite amazed that his witnesses all had the same thing. Well, she's just a prostitute. They don't see that as a person, they see that as something that is not a human, something you can throw away. When I heard them say that up there, did that—that offended me truly. We went through this many times. |
| --- | --- |

15

Defense: Objection, improper closing, injecting his own personal opinion.

Court: Overruled.

On appeal, Ilodiguwe does not specify which part of the prosecutor's statement was improper. He states only that the jury argument is improper because it falls outside the four permissible areas.

To the extent that Ilodiguwe objects to the prosecutor's statement about being personally offended by references to S.L. as a "prostitute,"[1] we note that a prosecutor's use of first-person diction in jury argument does not violate the prohibition against injecting personal opinion as long as the statement is not based on specialized knowledge. *See Jackson v. State*, 17 S.W.3d 664, 675 (Tex. Crim. App. 2000); *Maupin v. State*, 930 S.W.2d 267, 269–70 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding that prosecutor's statement, "I told you I was appalled," did not inject personal opinion solely by using first-person language). Furthermore, in light of the whole record, the prosecutor's statement in this case can be read as taking offense to the defense's repeated characterization of S.L. as a "prostitute."

---

[1] In his reply briefing, Ilodiguwe claims his appellate complaint does not concern the prosecutor's statement about what offended him. Rather, he claims that his appellate complaint concerns the prosecutor's later statement to the jury, "you're not talking about a rape of a prostitute, you are talking about a rape of one of our women." Ilodiguwe did not not object to this statement at trial, so he did not preserve a complaint about it for appellate review. TEX. R. APP. P. 33.1(a)(1); *McDonald v. State*, 186 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Such an argument properly constitutes a response to the opposing counsel's argument. *See Guidry*, 9 S.W.3d at 154; *Sally v. State*, No. 05-04-00557-CR, 2004 WL 2955844, at *4 (Tex. App.—Dallas Dec. 22, 2004, no pet.) (mem. op., not designated for publication) (upholding prosecutor's statement that it "offended" him when the defense implied that officer had lied).

We overrule Ilodiguwe's fifth issue.

## III. Ineffective assistance of counsel

In his fourth issue, Ilodiguwe asserts that he received ineffective assistance of counsel. We consider claims of ineffective assistance of counsel under the two-prong test adopted in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To prevail on a claim for ineffective assistance of counsel, an appellant must show that (1) trial counsel's performance was deficient; and (2) he was prejudiced by the deficiency. *Id.* at 687, 104 S. Ct. at 2064; *Ex parte Napper*, 322 S.W.3d 202, 246, 248 (Tex. Crim. App. 2010). To demonstrate deficient performance, the appellant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2052. The burden of proof is on the appellant to prove by a preponderance of the evidence that counsel was deficient. *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To show prejudice, the appellant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. "Reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id*.

We must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Lopez*, 343 S.W.3d at 142. For a reviewing court to find that counsel was ineffective, counsel's deficiency must be "affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id*. When direct evidence of counsel's deficiency is not available, we must assume that counsel had a strategy if any reasonably sound strategy can be imagined. *Id*. For this reason, the record often renders a direct appeal ineffective to adequately raise a claim of ineffective assistance of counsel. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Ilodiguwe bases part of his ineffective-assistance claim on unauthenticated letters attached to his motion for new trial. The two letters, separately written by Ilodiguwe and his wife and addressed to his trial counsel, purportedly indicate that he repeatedly asked his trial counsel to undertake various actions prior to trial. For example, the letter from Ilodiguwe instructed counsel to interview various witnesses, including S.L. "and possibly her pimp and friends," and to ascertain whether the State was also charging her for prostitution. The letter from the wife inquires why, among other things, Ilodiguwe would be testifying at trial.

Ilodiguwe claims that the letters demonstrate that trial counsel "failed to adhere to the trial strategies that would have exonerated" him. Furthermore, he asserts that trial counsel was ineffective because he failed to object to certain questions and testimony at trial. Finally, he argues that trial counsel failed to review the 911 audio recording before trial, which allegedly resulted in counsel's failure to adequately prepare Ilodiguwe to testify about the recording.

Even if evidence in our record affirmatively demonstrated trial counsel was deficient in any of these respects, however, Ilodiguwe has made no attempt to satisfy the second *Strickland* prong. That is, he has not shown that "there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He does not explain how any of the trial strategies he allegedly requested would have changed the result of his trial. He does not show how reviewing the 911 audio recording before trial would have led him to testify differently about the recording, or how different testimony would have resulted in a different result.[2]

---

[2] On this point, Ilodiguwe states only that jurors told his trial counsel that the 911 call convinced them of his guilt. Even if relevant to the question of whether Ilodiguwe was prejudiced by a failure to prepare to testify about the tape, such evidence would not be admissible in court to demonstrate prejudice. *See* TEX. R. EVID. 606(b) (prohibiting admission of juror's testimony about proper influences on deliberations); *Ex parte Parra*, 420 S.W.3d 821, 827 (Tex. Crim. App. 2013) ("Texas Rule of Evidence 606(b) prohibits us from considering juror testimony as to anything that occurred during deliberations, except in instances of determining outside influence

Similarly, he does not explain how sustained objections to allegedly improper questioning and testimony would have altered a different outcome. Because Ilodiguwe has not satisfied the second prong *Strickland*, he has not established a viable claim to ineffective assistance of counsel. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Ladd v. State*, 3 S.W.3d 547, 570 (Tex. Crim. App. 1999).

We overrule Ilodiguwe's fourth issue.

## IV.   Hearing on motion for new trial

Thirty days after the trial court entered its judgment and imposed the sentence, Ilodiguwe timely filed a motion for new trial. *See* TEX. R. APP. P. 21.4(a). This trial court did not conduct a hearing on Ilodiguwe's motion for new trial. After 75 days had expired without a ruling, the motion was denied by operation of law. *See* TEX. R. APP. P. 21.8(c).

In his second issue, Ilodiguwe argues that the trial court abused its discretion by not holding a hearing on his motion for new trial. Accordingly, Ilodiguwe argues that this appeal should be abated while a hearing is conducted.

A trial court's decision on whether to hold a hearing on a motion for new trial is reviewed for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A trial court abuses its discretion only when its decision

---

and claims regarding juror qualifications."), *cert. denied*, 134 S. Ct. 703 (2013).

20

was so clearly wrong as to lie outside the zone of reasonable disagreement. *Id*. Although the opportunity to prepare a record for appellate review makes the hearing on a motion for new trial a critical stage, a hearing on a motion for new trial is not an absolute right. *Id*. at 338. "A hearing is *not* required when the matters raised in the motion for new trial are subject to being determined from the record." *Id*. (quoting *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)). But the converse is also true: a trial court abuses its discretion in failing to hold a hearing when the motion raises matters which are not determinable from the record. *Id*.

Therefore, when the grounds in the motion are based on matters not already in the record, the motion must be supported by an affidavit of the defendant or someone else, specifically setting out the factual basis for the claim. *Id*. at 339. The affidavit need not establish a prima facie case or reflect every component legally required to establish relief. *Id*. The defendant needs only to establish "the existence of 'reasonable grounds' showing that the defendant is entitled to relief.'" *Id*. (quoting *Reyes*, 849 S.W.2d at 816). Furthermore, affidavits that are conclusory and unsupported by facts do not necessitate a hearing because they do not provide requisite notice of the basis for the relief claimed. *Id*. Consequently, our review is limited to "the trial judge's determination of whether the defendant raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Id*. at 340.

In the context of a motion for new trial based on ineffective assistance of counsel, the Court of Criminal Appeals has held that this showing requires an affidavit alleging sufficient facts from which a court could conclude that both prongs of the *Strickland* ineffective-assistance standard have been satisfied. *Id.* at 340–41.

In his motion for new trial, Ilodiguwe primarily alleged numerous claims for ineffective assistance of counsel. (He further alleged that the verdict was contrary to the law and evidence and that a new trial was needed in the interests of justice, but he did not provide any reasoning in support of either claim.) Ilodiguwe asserted that his counsel was ineffective for failing to file pretrial motions, review certain forensic evidence, request all exculpatory evidence from the State, conduct interviews of the State's witnesses, retain a private investigator, employ an expert witness, or seek a plea agreement. Ilodiguwe alleged that his attorney failed to carry out each of these actions despite his requests. Furthermore, Ilodiguwe claimed that counsel forced him to testify against his will by not proffering any other defense witnesses.

To support his motion for new trial, Ilodiguwe attached an affidavit from his appellate counsel. Additionally, Ilodiguwe attached letters written by himself and his wife, addressed to his trial counsel. In the affidavit, Ilodiguwe's appellate counsel echoed the allegations in the motion for new trial, with a few exceptions.

He averred that Ilodiguwe "asked his attorney to examine the forensic result in possession of the [S]tate," but he did not allege that trial counsel failed to fulfill that request. He did not allege that trial counsel refused to employ expert witnesses. Similarly, the letters from Ilodiguwe and his wife purported to demonstrate requests to his trial counsel to perform certain actions. The letters were addressed to trial counsel and dated weeks before trial. However, the authenticity of the letters was not established by Ilodiguwe or his wife. Nor did the letters indicate that they had ever been delivered to trial counsel, despite the statement in Ilodiguwe's letter that he intended to deliver the letter by hand.

The motion and attachments alleged that trial counsel was deficient in numerous ways, but they did not raise any grounds undeterminable from the record to demonstrate the prejudice required for an ineffective assistance of counsel claim. *See id.* at 340–41. At no point in the motion or affidavit did Ilodiguwe allege facts from which the trial court could reasonably conclude that, but for his counsel's failure, there was a reasonable likelihood that the outcome of trial would have been different. On this basis alone, Ilodiguwe's motion and attachments did not raise grounds that would reasonably entitle him to relief. *See id.* at 344.

Moreover, we note that the attachments to Ilodiguwe's motion constitute only hearsay and unauthenticated letters. The only affidavit given in support of Ilodiguwe's motion was the affidavit of his appellate counsel. In the affidavit,

23

appellate counsel stated under oath that trial counsel "was ineffective in his representation." Appellate counsel then proceeded to state that Ilodiguwe had communicated various requests to his attorney, and those requests were not fulfilled. Because these statements were inadmissible hearsay with respect to Ilodiguwe's requests to trial counsel, they do not constitute evidentiary support of the motion for new trial. *See Grant v. State*, 172 S.W.3d 98, 101 (Tex. App.—Texarkana 2005, no pet.) ("When the grounds for a new trial are outside the record, the movant must support the motion by his or her own affidavit or by the affidavit of someone else specifically showing the truth of the grounds of attack.") (citing *Vyvial v. State*, 10 S.W.2d 83, 84 (Tex. Crim. App. 1928)). As such, they do not provide a factual basis to support the existence of reasonable grounds showing that Ilodiguwe could be entitled to relief. *See Smith*, 286 S.W.3d at 339; *Vyvial*, 10 S.W.2d at 84.

For each of the reasons above, Ilodiguwe's motion for new trial did not raise grounds that would reasonably entitle him to relief. *See Smith*, 286 S.W.3d at 339. The trial court did not abuse its discretion in failing to hold a hearing on Ilodiguwe's motion for new trial. *See id.*

We overrule Ilodiguwe's second issue.

## Conclusion

We affirm the trial court's judgment.

Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).