**Affirmed and Memorandum Opinion filed June 28, 2012.**



In The

# Fourteenth Court of Appeals
_____

## NO. 14-10-00831-CR
_____

## GEORGE ARRIOLA LONGORIA, Appellant

### V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1208520

## MEMORANDUM OPINION

George Arriola Longoria appeals his conviction for aggravated sexual assault of a child younger than six years of age, arguing that the trial court erred in admitting photographs and a video of an interview in which the complainant demonstrated how appellant abused him; that appellant's trial counsel was constitutionally ineffective; and that the trial court erred in denying appellant's motion for new trial. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kelly Lee[1] adopted J.L. from Russia as an infant in 2004 and brought him to live with her in Houston, Texas. In 2006, Kelly married David Newman, who helped raise J.L and grew to look upon J.L. as his own son. Kelly and David were close with an older couple, the Longorias. J.L. adored appellant and his wife, Dora Longoria, and they would often babysit J.L. and even have him stay the night. One evening in late January 2009, David drove to the Longorias to pick up J.L., who was five years old at the time. As David and J.L. drove home, J.L. told David that appellant "keeps touching my private parts" and "likes to kiss my pee pee and where I poop." That night, after putting J.L. to bed, Kelly called the police. Several days later, Kelly and David took J.L. to be interviewed by Lisa Holcomb, a forensic interviewer at the Children's Assessment Center. During the interview, which was video recorded and played at trial, J.L. demonstrated what had been done to him by putting his hands over his genitals; showing how appellant had pushed J.L.'s head down toward appellant's genitals; and sucking on his leg. J.L. also told Holcomb that he was made to put his mouth on appellant's genitals and demonstrated how he jerked his head back to keep from doing so.

Appellant was charged with aggravated sexual assault of a child younger than six years of age. At trial, appellant took the stand in his own defense, denying all of J.L.'s accusations. At the beginning of appellant's direct examination, trial counsel asked appellant about his hearing difficulties:

> Q: I notice that you're wearing hearing aids. When did you get the hearing aids?
>
> A: Last week.
>
> Q: And how long have you had that problem with your hearing?

---

[1] To protect J.L.'s identity, we refer to his adoptive parents by the pseudonyms "Kelly" and "David." *See* TEX. FAM CODE ANN. § 109.002(d) (West Supp. 2011); TEX. R. APP. P. 9.8(b).

2

A: Well, quite a few years back.

A: If you don't hear me, just ask me to repeat the question, okay?

A: Okay.

Q: Are you hearing okay now?

A: Yes.

At several points during his testimony, however—particularly during cross-examination—appellant seemed to have difficulty hearing the questions. Several times he answered questions with "Huh?" or asked the prosecutor to repeat the question.

The jury convicted appellant of the charged offense and the trial court sentenced him to 25 years in prison. *See* TEX. PENAL CODE ANN. § 22.021(a)(1), 22.021(f)(1) (West 2011). Appellant timely filed a notice of appeal and then a motion for new trial, arguing that he had been deprived of a fair trial because of his hearing issues and that his trial counsel had been constitutionally ineffective for failing to bring that issue to the trial court's attention. To support this motion, appellant submitted a series of affidavits in which appellant, his wife, and his brother-in-law each criticized counsel's performance and preparation for trial and attested that appellant had significant hearing difficulties. He also attached an affidavit in which his assistant defense attorney stated that

> [i]t was obvious to me by observing [appellant's] demeanor during cross-examination that he could not hear [the prosecutor] very well. This was so even after she moved closer to him. I observed him struggle to the point where he appeared to finally give up and just started agreeing with everything she said.

Appellant's motion for new trial was overruled by operation of law on November 1, 2010. The trial court issued a written denial of the motion one month later.

3

## II. QUESTIONS PRESENTED

In his first issue, appellant argues that the trial court erred in admitting photographs and a video recording of part of J.L.'s Child Assessment Center interview in which J.L. physically demonstrated how appellant abused him. In his second issue, appellant contends that he received ineffective assistance of counsel because counsel (1) failed to object to the State's allegedly improper commitment questions at voir dire; (2) offered into evidence J.L.'s otherwise-inadmissible school records, which the State proceeded to use against appellant; (3) offered into evidence the full video recording of J.L.'s Child Assessment Center interview immediately before the jury began its deliberations; and (4) failed to inform the trial court that appellant had hearing problems. Finally, appellant argues that the trial court erred in denying appellant's motion for new trial because he was deprived of a fair trial due to his inability to hear the proceedings against him.

## III. ANALYSIS

### A. Admissibility of Photographs and Video Clips

Appellant first argues that the trial court erred in admitting ten video stills and a corresponding video recording of part of J.L.'s Child Assessment Center interview. In the video, J.L. demonstrated what he alleged had been done to him by putting his hands over his genitals; showing how appellant had pushed J.L.'s head down toward appellant's genitals; sucking on his leg; and demonstrating how he jerked his head back to keep from kissing appellant's genitals. Appellant objected on hearsay grounds when the State offered the photographs into evidence and objected again on the same grounds when the State offered the video sequence. The trial court overruled both objections.

We review a trial court's evidentiary rulings for an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). There is no abuse of discretion if the trial court's

4

decision in within the "zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). We must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). Under this rule, we may not reverse for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Casey v. State*, 215 S.W.3d 870 (Tex. Crim. App. 2007). Error, if any, in the admission of the recorded interview and still photographs was non-constitutional in nature. *See id.* (applying standard of review under rule 44.2(b) to erroneous admission of evidence).

After examining the record as a whole, we conclude that any alleged error in admitting the recorded interview was harmless. J.L. took the stand and testified that appellant touched J.L.'s genitals, kissed his "front and back privates," and "almost" made J.L. kiss appellant's "front private." J.L. demonstrated each of these behaviors with court-provided dolls, including showing how he jerked his head back to keep from kissing appellant's genitals. These demonstrations mirrored those shown in the Child Assessment Center interview. Holcomb also testified about what J.L. told her in the Child Assessment Center interview, which correlated with J.L.'s recorded demonstrations. Appellant objected to Holcomb's testimony at trial as hearsay, but he does not argue on appeal that the trial court erred in admitting her testimony. Finally, appellant himself later asked the trial court to allow the jury to watch the entire interview. Viewing the record as a whole, any alleged error in admitting the video stills and video sequence was harmless. We overrule appellant's first issue.

## B.     Ineffective Assistance of Counsel

Appellant next argues that his trial counsel was constitutionally ineffective because counsel (1) failed to object to the State's allegedly improper commitment questions at voir dire; (2) offered into evidence J.L.'s otherwise-inadmissible school records, which the State later used to induce testimony that further damaged appellant; (3) offered into

5

evidence, immediately before the jury began its deliberations, the full video recording of J.L.'s Child Assessment Center interview; and (4) failed to inform the trial court of appellant's hearing problems.

At voir dire, the State posed to the venire a hypothetical of

> a 5-year-old little girl whose step grandfather has been watching her for a couple of years, two or three years. . . . And one day mama is bathing her little Susie. . . . And she says, mommy, Pawpaw likes to kiss me there on my pee pee.

The State asked the venire to consider possible reasons for the hypothetical victim's delayed outcry. Later, the State asked each venire member whether he or she could convict a perpetrator solely on the basis of a single child eyewitness, assuming he or she believed the child beyond a reasonable doubt. The trial court emphasized several times that the venire member should assume for the purposes of the question that he or she believed the child's testimony beyond a reasonable doubt and should answer "no" only if he or she would require something more to convict. Appellant's counsel did not object to the State's questions.

During his case in chief, appellant called as a witness J.L.'s former kindergarten teacher, Deborah Cook, and introduced J.L.'s school records from his time at the school. Counsel asked Cook about a number of minor incidents mentioned in the school records, such as J.L.'s picking his nose and running into a pole. After the trial judge interjected that he did not see the relevance of counsel's line of questioning, appellant quickly concluded his questioning and passed the witness. On cross-examination, the State capitalized on the admission of J.L.'s school records, asking Cook to read into the record an entry from February 3, 2009—less than a week after J.L.'s initial outcry to David—stating as follows:

> During quiet time [J.L.] said that someone had touched his privates. I figured he was talking about a friend in class. We had discussed not patting friends['] bottoms and not touching anyone's private areas for any reason because it's their body, not ours. If their friends hit, slapped or touched

6

them, they are to let me know especially if their friend hit their private areas. I had asked him who it was and what they touched and how. I wanted to make sure his friends didn't hit his bottom. He told me his friend George had touched and kissed his private area in front. He told me it was under his clothes. I asked him if he told mom and dad. He said he had told daddy. I told him that was exactly what he was supposed to do. Good job. I asked if it happened a long time ago or recently. He said a little while ago. I asked if he was okay with me mentioning it to daddy. He said okay. He also said that George was a lot older. I told him that I was sorry and that I was proud he told.

Finally, at the end of his case in chief, appellant offered into evidence the full video recording of J.L.'s Child Assessment Center interview, telling the trial court that he wanted "to show the inconsistent statements that [J.L.] made at the center and to show the inconsistent statements that were made by the lady that was in the video room, the forensic interviewer." Up to that point, only the parts of the video in which J.L. physically demonstrated what appellant had done to him had been shown to the jury. During its closing argument, the State emphasized to the jury that it should "watch that video over and over and over again" and asked, "if you acquit [appellant], can you live with yourself having watched that video?"

We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, an appellant must prove that his trial counsel's representation was deficient and that the deficient performance was so serious that it deprived appellant of a fair trial. 466 U.S. at 687, 104 S. Ct. at 2064. To establish the first prong, an appellant must show that counsel's performance fell below an objective standard of reasonableness. 466 U.S. at 688, 104 S. Ct. at 2064. Regarding the second prong, an appellant must demonstrate that counsel's deficient performance prejudiced his defense. 466 U.S. at 692, 104 S. Ct. at 2067. To demonstrate prejudice, an appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694, 104 S. Ct. at 2068. *See also Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (explaining that "reasonable probability" as used in the

prejudice prong is "probability sufficient to undermine confidence in the outcome" of the proceeding) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. 466 U.S. at 697, 104 S. Ct. at 2069.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v, State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of a claim of ineffective assistance of counsel. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is undeveloped. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994).

Finally, "[i]t is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were

8

outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

In his motion for new trial, appellant raised the issue of his counsel's ineffectiveness. However, no hearing was held on the motion. In a supporting affidavit, appellant attested that counsel "did not seem prepared for voir dire. He did not seem ready to ask the panel the right questions." Appellant's brother-in-law, a criminal defense attorney, also submitted an affidavit in which he criticized counsel's introduction of the full interview video; said that counsel "missed important and material objections during the State's voir dire, wherein he allowed the State to commit the jury to the State's position . . ."; and concluded that, in his opinion, counsel's legal representation "fell below the standard of reasonably effective representation of [appellant]." In response to these allegations, trial counsel submitted an affidavit of his own in which he justified his actions with respect to appellant's hearing problems, stating that appellant told counsel before trial that he had gotten new hearing aids and could "hear real good" and that appellant never complained of hearing difficulties during trial. Counsel further explained his introduction of the videotaped interview, noting that the State had already introduced much of the video and "w[h]en I looked at the jury, and I saw one of the jurors very distraught after the child gave his testimony, I felt that the video would help us in showing the jury some of the inconsistent statements that the child had made."

The record is silent about appellant's strategy in failing to object to the State's questions on voir dire and his introduction of J.L.'s school records. Neither appellant's motion nor his supporting affidavits mention the school records, and the affidavits criticizing counsel's performance at voir dire do so only in a general sense—appellant's brother in law alleged that counsel "missed important and material objections during the State's voir dire, wherein he allowed the State to commit the jury to the State's position . . ." but did not specify what objections appellant missed. Appellant himself stated in his

9

affidavit merely that counsel "did not seem prepared for voir dire." Counsel did not respond to allegations about the school records or voir dire in his own affidavit, and no hearing was held on this issue. In the absence of a record allowing us to determine trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." That is not the case here.

Appellant argues that the State's voir dire questions were improper commitment questions. "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). In *Standefer*, the Court of Criminal Appeals set out a three-prong test for determining whether a voir dire question calls for an improper commitment. *Id.* at 179–83. The trial court must first determine whether a particular question is a commitment question. *Id.* at 179–81. If the court determines that it is, then it must consider whether the question leads to a valid challenge for cause. *Id*. at 181–82. If it does, then the court must decide whether the question includes only those facts necessary to test whether a prospective juror is challengeable for cause. *Id.* at 182–83. The State offered its hypothetical child victim as a means of asking the venire members to consider possible reasons for a delayed outcry. This was not a commitment question because the State did not ask the jurors to resolve an issue a certain way after learning a particular fact—the State merely solicited the venire members' views on possible reasons why a child might delay his or her outcry of sexual abuse in general. *See McDonald v. State*, 186 S.W.3d 86 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Do you feel that children likely will make up sexual abuse or unlikely?" was not a commitment question because "the question merely asks the prospective jurors whether they think it is likely or unlikely that children *generally* will fabricate allegations of sexual abuse"); *see also Standefer*, 59 S.W.3d at 183 n.28 (noting that "a question in a child molestation case which inquires whether the juror believes that no child could/would lie about such a thing" is not improper) (internal quotation omitted).

The State also asked the venire members whether they could convict a defendant solely on the basis of a single child eyewitness, *assuming* they believed the child beyond a reasonable doubt. The trial court emphasized several times that the venire members should assume for the purposes of the question that they believed the child's testimony beyond a reasonable doubt and should answer "no" only if they would say, "even though I know they're telling me the truth, that's not enough for me, I've got to have more." This is a commitment question, but not an improper one; it merely asks the prospective jurors whether they intend to hold the State to a higher burden than guilt beyond a reasonable doubt. *See Lee v. State*, 176 S.W.3d 452, 459–61 (Tex. App.—Houston [1st Dist.] 2004, pet. granted) (where State inquired whether the prospective jurors could convict based on the testimony of only one witness *if they believed that witness beyond a reasonable doubt*, question was commitment question but not improper because juror who answered "no" would be challengeable for cause, and using example of minor victim "served only to distinguish the hypothetical"). With respect to the third prong of *Standefer*, although the State indicated to the jury that the victim was a child under the age of six, this fact was apparent from the indictment. *See Green v. State*, 191 S.W.3d 888 ("*Lee* is distinguishable from the facts of this case because the prosecutor in *Lee only included facts in the indictment* in the voir dire question, not those facts specific to the case at bar.") (emphasis added). The State's more case-specific hypothetical was brought up in the context of delayed outcry, not in the context of asking the venire members if they could convict based on the word of a single child eyewitness.

With respect to the school records, during his own testimony, J.L. testified that a school friend his age had also touched J.L.'s genitals several times. Trial counsel may have hoped to elicit further testimony on this subject based on the school records. There is some indication in the record that this was counsel's intent. Shortly after introducing the records, counsel asked Cook,

"In your rules or regulations over at the school, was that a rule to enter *activities that the children were involved in that may have been involving other children?*

. . . .

Were there any activities *involving other children* with [J.L.]?

. . . .

And if something *happened to that child during the play period*, would you enter it into those records?

(emphasis added). Counsel's failure—or even questionable competence—in eliciting such testimony is not sufficient proof that he lacked a valid trial strategy. *See Mata*, 226 S.W.3d at 430. Further, trial counsel had little to lose in introducing the school records because no information in the records was more damaging to appellant than similar testimony already in evidence. According to the records, J.L. told Cook that his older friend, George, had "touched and kissed his private area in front . . ." J.L. and David gave the same testimony. Holcomb also testified—over appellant's objection—that J.L. had told her the same things. Indeed, the school records for the incident are dated February 3, 2009, several days after J.L.'s initial outcry. The records themselves make clear that J.L. had already told David about the abuse. Thus, all the school records show is that J.L. told his school teacher about his initial outcry to David—not that J.L. told his teacher about a different occasion or type of abuse than that which the jury had already heard. Counsel may have concluded that he had more to gain than to lose by introducing the school records, even if there were only a small chance that he could elicit testimony about the alleged incident involving J.L.'s classmate.

With respect to appellant's hearing issues, counsel stated in his affidavit that appellant repeatedly assured him that he could hear properly. Further, counsel did not fail to bring appellant's hearing problems to the trial court's attention. At the beginning of appellant's direct examination, counsel asked appellant about his hearing aids and his hearing difficulties. Appellant testified that he had suffered from hearing loss for a long time but that he was wearing hearing aids. Counsel asked appellant, "Are you hearing

12

okay now?", to which appellant answered, "Yes." The trial judge was present during this exchange.

With respect to J.L.'s Child Assessment Center interview, trial counsel pointed out in his affidavit and at trial that the most damaging parts of the interview—J.L.'s demonstration of what he claimed appellant did to him and made J.L. do—had already been admitted over counsel's objection. J.L.'s description of those activities to Holcomb had also been admitted over counsel's objection. Appellant's counsel told the trial court that he wanted the jury to see the full video to highlight inconsistencies in J.L.'s story and Holcomb's testimony. Whether or not this strategy was effective, it was not outrageous under the circumstances.

On this record, we cannot conclude that counsel's performance was "so outrageous that no competent attorney would have engaged in it." Further, as noted above, "[i]t is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *See Patrick*, 906 S.W.2d at 495. On this record, we cannot conclude that counsel's errors—if they were indeed errors—were so serious that he was not functioning as counsel. We overrule appellant's second issue.

## C.     Denial of Motion for New Trial

Finally, appellant argues that the trial court erred in denying his motion for a new trial. We first address the State's contention that appellant cannot raise the trial court's denial of his motion as an error because it came after his motion had been overruled by operation of law and the trial court's denial was therefore a nullity. A trial court must rule on a motion for new trial within 75 days after imposing a sentence in open court. TEX. R. APP. P. 21.8(a). A motion not timely ruled on by written order is deemed denied at the expiration of the time for issuing the ruling. *Id*., 21.8(c). When the time in which to rule

13

upon a motion for new trial has expired and the motion has been denied by operation of law, the trial court has no further authority to grant a new trial. *State ex rel. Cobb v. Godfrey*, 739 S.W.2d 47, 49 (Tex. Crim. App. 1987) (citing *Ex Parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982) and *Zaragosa v. State*, 588 S.W.2d 322 (Tex. Crim. App. 1979)). Any ruling on the motion after this point is a nullity. *Id.* (citing *Meek v. State*, 628 S.W.2d 543, 547 (Tex. Crim. App. 1982)).

Appellant was sentenced in open court on August 18, 2010. Appellant timely filed his motion for new trial on September 17, 2010.. The time for the trial court to rule on this motion expired on November 1, 2010, 75 days after sentencing. The trial court did not deny the motion until December 1, 2010, 105 days after sentencing. Thus, we agree that the trial court's order denying appellant's motion was a nullity. However, the trial court allowed appellant's motion for new trial to be overruled by operation of law. We decline to hold that appellant cannot challenge that decision merely because he points to the trial court's order as the erroneous decision rather than to the trial court's allowing his motion to be overruled by operation of law. *Cf. Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007) ("While preservation of error is systemic . . . we will not be overly technical in our examination of whether error is preserved.").

We agree, however, with the State's second argument on appeal—that appellant has failed to show that he timely presented his motion for a new trial to the trial court. *See* TEX. R. APP. P. 21.6 (requiring defendant to "present the motion for new trial to the trial court . . . ."). To satisfy this requirement, "the record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court." *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998). Merely filing a motion is not sufficient to show presentment. *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 1999). Presentment can be proven in many ways, including by a notation on the proposed order or court's docket sheet or by securing a ruling. *Thomas v. State*, 286 S.W.3d 109,

14

116 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Stokes*, 277 S.W.3d at 22, 24 and *Carranza*, 960 S.W.2d at 79). The purpose of the presentment rule is "to put the trial court on actual notice that the defendant desires the trial court to take some action on the motion for new trial such as a ruling or hearing on it." *Stokes*, 277 S.W.3d at 21 (quoting *Carranza*, 960 S.W.2d at 78). Presentment must occur within ten days of filing the motion, unless the trial court in its discretion permits it to be presented within 75 days of sentencing. TEX. R. APP. P. 21.6. The trial judge did not sign appellant's motion for new trial, and there is no docket entry in the record acknowledging that the motion was presented. The only acknowledgement of appellant's motion is the trial court's written denial, which was signed 105 days after sentencing. This denial is not evidence that appellant *timely* presented his motion for new trial to the trial court. Because appellant has failed to show that he timely presented his motion for new trial to the trial court, we cannot conclude that the trial court erred in not granting that motion. We overrule appellant's final issue.

## IV. CONCLUSION

The trial court's admission of the photographs and video of J.L.'s Child Assessment Center interview, if erroneous, was harmless; trial counsel was not constitutionally ineffective; and appellant failed to present his motion for new trial to the trial court.

We affirm the trial court's judgment.

/s/           Tracy Christopher
Justice

Panel consists of Justices Frost, Brown, and Christopher.
Do Not Publish — TEX. R. APP. P. 47.2(b).